Louis Miramon alleges that he is engaged in business as a furnisher of lumber, building materials and supplies, operating as "All American Lumber and Building Material Company" and that he sold and delivered certain lumber and materials to Harold Carreras, a contractor, to be used in a building which the said Carreras was erecting for P.J. Arnoult in New Orleans.
Miramon also alleges that there was a building contract between Carreras and Arnoult and that Central Surety Insurance Corporation intervened in the said contract and, as surety for the said Carreras, guaranteed the faithful performance of the work and that all lumber, building material, etc., would be paid for. Plaintiff alleges also that the lumber and supplies sold and delivered to Carreras were correctly priced at $1,546.27, but that the said contractor has failed to pay therefor.
A solidary judgment for this amount is sought against Carreras and his said surety.
The Surety Company answered admitting that it had signed the said contract but denying all the remaining allegations because of lack of information, and the said surety alleged that when it executed the said contract as surety for Carreras, it obtained a written indemnity agreement signed by Carreras, and also by Mrs. Flavia Crowley Carreras and Mrs. Julia Schneider Crowley, as indemnitors, and it alleged that in the said indemnity agreement it was stipulated that should loss be sustained by the said surety, the said indemnitors would hold it harmless and would also pay such reasonable attorney's fee as might be incurred by the said surety company. The said surety company therefore prayed that if judgment be rendered against it in favor of plaintiff, it have judgment in warranty against the said indemnitors for the same amount which it might be condemned to pay, and for a reasonable attorney's fee.
Carreras admitted the execution of the building contract but denied that he had "ever had any business transaction with Louis Miramon" but admitted "that he made certain purchases from an `All American Lumber and Building Material Company'". Carreras further specially pleaded fraud and alleged that Miramon had "nefariously" used this building contract "to ruin * * * defendant financially" because they were competitors and because he, Carreras, "had hired two of Miramon's carpenters from him by offering them a better and a living wage."
Carreras also admitted that the said All American Lumber and Building Material Company had agreed to sell and deliver certain lumber and materials for a stipulated price of $1,024 but he averred that it had charged him the amount now sued for, to-wit, $1,546.27.
After a lengthy trial, there was judgment as prayed for in favor of Miramon and against Carreras and Central Surety 
Insurance Corporation, and there was also judgment in warranty in favor of Central Surety Insurance Corporation and against Carreras and Mrs. Flavia Crowley Carreras and Mrs. Julia Schneider Crowley for the same amount, to-wit $1,546.27, and there was judgment also in favor of Messrs. St. Clair Adams and Son, attorneys for the Surety Company, and against Carreras and the said indemnitors in the sum of $150, as attorney's fees.
Both Carreras and the Surety Company have appealed.
There is nothing whatever in the evidence which, to any extent, substantiates the charge of fraud, and we pass at once to a consideration of the other defenses.
In the first place, the record shows without any contradiction that Mr. Miramon operated his business as All American Lumber and Building Material Company, and that it was he, Miramon, who, under this name, agreed to furnish the lumber and materials which Carreras agreed to buy for $1,024. Since there is no dispute concerning the delivery of the items represented by that amount, the controversy is reduced to the difference between the amount sued for, $1,546.27, and $1,024, which is obviously due under the contract. This difference, $522.27 is made up of items *Page 640 
of extra lumber and material, all of which Carreras at first denied having received. Later, however, he admitted that some of these had been delivered so that at this time the amount in controversy has been further reduced.
Carreras now contends that he did not receive certain items for which he has been charged $295.58. He further claims that on certain other items, receipt of which he admits, he was overcharged by $43.60, and he also maintains that among the items which he says he did not receive at all were some which were billed to him at an excessive price, and as to these he asserts that even if the proof shows that they were delivered, the price should be reduced by $12.13.
The proof as to delivery of all of the items is made by the manager of plaintiff and by the draymen who say that they made the deliveries, and dray receipts were produced to prove all but 11 of those deliveries. These witnesses testified that these 11 deliveries had also been made.
When Carreras first took the stand he denied having received any of these items, but when confronted with dray receipts, bearing the signatures of various of his employees, after first denying that the signatures were genuine, he was shown such proof as forced him to admit that he had received the goods represented by those receipts, and he then limited his denial of receipt to the 11 items for which no dray receipts could be produced. His original attitude concerning all of the deliveries has very much affected the weight which must be accorded to his testimony as to these 11 items, and when we find that he, himself, was "on the job" for only a small portion of each day and that almost all deliveries were made to his employees, his denial of receipt makes no impression at all. He failed to produce as a witness his foreman, whose testimony, as to the items which he says he did not receive, would have been very valuable. In explanation of his failure, his counsel says that this witness had moved away, which may be true, but his principal explanation is his contention that this witness should have been produced by plaintiff and not by defendant, since the burden of proof rests upon plaintiff. But the testimony given by this witness, if defendant is correct, would have been most valuable to him, and since this witness had been in his employ, he should have produced him, and his failure to do so weighs against him because we are rather convinced that this witness could have been found had defendant made any serious effort to locate him.
It is pointed out by plaintiff that among the various kinds of lumber required to build the house were sills and other large timbers, which are represented among those 11 deliveries which Carreras says he did not receive, and it is argued that the fact that such timbers were used is proof that they must have been delivered.
Defendant counters with the statement that those large timbers had been bought by him from another material man to be used in another house which he had decided not to build. But he did not produce the other material man, again taking the position that if plaintiff thought it advisable to obtain testimony from this other material man, he should have done so. But here again Carreras overlooks the fact that this is testimony which would have been favorable to him and that it was he, himself, who made the contention that these other timbers had been purchased from this other material man. Again his failure to produce the evidence must weigh heavily against him.
In view of all of these facts and, particularly in view of the finding of the trial court, we reach the conclusion that the record shows that these 11 items were actually delivered.
The defense that certain items, admittedly received, were billed at too high a price is interesting. The record shows that similar items were included in the original contract and that in it such items were priced at a slightly lower figure, and defendant contends that these extras should have been priced at the same figure which was given in the contract. But the record shows that it is not the custom to bill extras at the original contract price and that such extras are customarily charged for at the market price. And it is shown that the market price was charged for these extras.
Counsel for defendant points to Article 3 of our Civil Code which provides that
"Customs result from a long series of actions constantly repeated, which have by such repetition, and by uninterrupted acquiescence, acquired the force of a tacit and common consent." *Page 641 
But the proof in the record shows that this custom has been established and prevails in this locality.
The services of counsel for the Surety Company in the District Court and in this court were worth the sum of $150, which has been allowed.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.